The Chancellor.
If the facts which now appear 'before the court, by the affidavits which have been taken in support of the petition, had appeared before the master, he would not have granted the injunction to stay the sale of the mortgaged premises. The conduct of the defendant has been inexcusable. He offers not the slightest excuse in extenuation; and the evidence ho has himself taken presents him in a position before the court which does not entitle him to its favorable consideration, and which excites a very strong suspicion that he is himself conscious that ho is asking, by his petition, what he is not equitably entitled to.
His first act of negligence was in not appearing to the suit. He was the only defendant served with process; and being notified according to law, he ought to have appeared, and seen that his interest was protected. His allegation, in his petition, that he did not know that John B. Myers would present the mortgage before the master, is not made with sincerity. According to the petitioner’s own statement, if it is true, the character of the mortgage was such as rendered it absolutely necessary for the petitioner to defend himself against it in the suit. But the subsequent conduct of the petitioner is unaccounted for. After the hill was filed for the foreclosure and sale *320 of the mortgaged premises, the judgment creditors, who were parties to the foreclosure suit, sold the mortgaged premises by execution at law upon their judgments. Urquhart was present at the sale. The property, with his consent, was sold subject to the mortgage now in dispute. The property was bought by Charles W. "Wharton, and, as the petitioner alleges and insists, in trust for him. Under such circumstances, with what face does this petitioner come before the court, and ask that the decree may be opened, in order to give him an opportunity of showing that there is nothing due upon this mortgage ?
Again. On the 31st of October, 1855, a few days after the sheriff’s deed to Wharton, Urquhart and his wife released to Wharton all their right and title in the mortgaged premises. The petitioner, Urquhart, has therefore no interest in the land, and of course no right to be heard. His counsel alleged, in argument, that this sale was fraudulent, and the release also. But the petitioner’s mouth is closed on this point. His petition was the proper place for him to have made such an allegation. It is very evident the sale and the release were purposely concealed. The allegation of fraud has not the semblance of truth, from anything that apjsears in the evidence.
But further., The decree is dated January 5th, 1856. The property was advertised for sale for the 28th day of May, 1856. The petitioner appeared at the time and place of sale, and, at his request, the sale was adjourned to the 25th of June. On that day, the petitioner again appeared, and, at his request, the sale was further adjourned to the 23d of July. On that day, the petition was presented to the master, and the injunction granted to stay the sale. The conduct of the petitioner in appearing, from time to time, and asking these adjournments, is not explained. Unless he could offer some excuse for such ¡conduct and such delay, he waived his equity, if he had any. I do not see that the petitioner has the slightest ground to stand upon. His petition must he dismissed with costs.
*321 One of the judgment creditors lias presented a petition. The judgment creditors voluntarily sold, at law, all their interest in the mortgaged premises. As to there being any fraud in the sale, there is not the slightest evidence of it.